[Civ. No. 15512. First Dist., Div. One. Sept. 10, 1953.]

RUTHERFORD, INC., Respondent, v. G. N. ROUSE et al., Appellants.

Wallace, Garrison, Norton & Ray for Appellants.

Willard E. Bohn and Robert H. Kroninger for Respondent.

BRAY, J.—From a judgment against them for $6,741.43 entered upon a jury verdict, defendants Rouse and Underwriters at Lloyd's appeal.

### QUESTIONS PRESENTED

1. Did the evidence of insurance issued by defendants to plaintiff cover the Atkinson contract?

2. Was the cost of fighting fire an element of damage under the policy?

### FACTS

In May, 1949, plaintiff had a contract with the Utah Construction Company to do clearing over segments of a roadway which the latter had contracted with the United States government to build through a national forest in Oregon. Under this contract, plaintiff was required to obtain a contract of indemnity insurance. An underlying contract of insurance limited to a $5,000 loss was obtained from the Hartford Fire Insurance Company. The excess over this amount was obtained from defendants Rouse and Underwriters for plaintiff by its insurance brokers, Johnson and Wright, dealing through defendant Philip Antrobus, Inc., who represented Rouse and the Underwriters. The policy in question

indemnified plaintiff "for any and all sums which the Assured shall by law become liable to pay, and shall pay, or by final judgment be adjudged to pay . . . as damages for:— Damage to Property . . . by reason of operations" described in the Hartford policy, and for loss "in respect of Property Damage Liability only" on certain numbered contracts between plaintiff and the Utah Construction Company "and extensions of, or additions to, contracts at the same location between the same parties." The term of the policy was from May 27, 1949, to May 27, 1950. Early in 1950 plaintiff completed its work for the Utah Construction Company. Plaintiff thereupon took a subcontract from Guy F. Atkinson Company, which held a master contract for the construction of a further segment of the highway. March 30, 1950, plaintiff's broker wrote Antrobus: "Will you kindly furnish us with certificate of insurance under captioned policy for: Guy F. Atkinson, Cascade Building, Portland, Oregon. This is in connection with some work which Rutherford, Inc., is subcontracting from Guy F. Atkinson near Lowell, Oregon. The amount of the contract is approximately $200,000.00. We will furnish you with additional information when we get a copy of the contract." March 31st, Antrobus replied: "We enclose Certificate of Insurance for Guy F. Atkinson per your letter dated March 30th. We wish to remind you that the above captioned Certificate expires on May 27, and we will appreciate renewal advices at your convenience." Enclosed was the following document:

"Certificate of Insurance.

"To: Guy F. Atkinson Company
 Address: Cascade Building,
 Portland, Oregon.

This is to certify that we have placed with Lloyd's Underwriters through our London correspondents the following described policy of insurance:

Name of Assured: Rutherford, Inc.
Certificate No.: AL 4421
Policy No.: Effective: 5/27/49 Expiring: 5/27/50
Coverage: Excess Property Damage Liability Insurance.
Limits: $245/225,000.00 excess of $5/25,000.00.
Subject to ten (10) days' Cancellation Clause."

No additional premium was charged for the issuance of this certificate.

All of the negotiations concerning insurance had between plaintiff's brokers, Johnson and Wright, and Philip Antrobus, Inc., defendants' agent, were handled by Goodenough for the former and McDowell for the latter. Goodenough died prior to trial and hence the sole version of those negotiations obtainable was that of McDowell and Philip Antrobus. McDowell testified that based on his 18 years' experience in the insurance world he did not consider plaintiff's March 30th letter as a request for an amendment of plaintiff's insurance policy, nor by issuing the "Certificate of Insurance" addressed to Atkinson did he intend in any way to modify that policy. Both he and Philip Antrobus testified that the purpose of such a certificate was merely a routine method of informing Atkinson that plaintiff carried liability insurance. It merely certifies that the insured carries a certain numbered insurance policy and the recipient of a certificate such as Atkinson receives is supposed to go to the insured and obtain from the policy its full terms.

On April 12th plaintiff's brokers wrote Antrobus: "In accordance with our letter of March 30th we are enclosing herewith copy of portions of the contract agreement between Guy F. Atkinson Company and Rutherford, Inc. We have taken the liberty of adding 'Company' after the name of 'Guy F. Atkinson' on the certificates which you furnished us. We should also appreciate your sending us two more copies of the certificate." Included in the excerpts from the contract was one requiring plaintiff to hold Atkinson and the government harmless from all damage from any fire caused by plaintiff. Another excerpt required plaintiff to furnish, at its own expense, contractor's comprehensive public liability insurance and furnish Atkinson evidence that it carried such insurance. Plaintiff assumed that the "Certificate of Insurance" of March 31st covered the Atkinson contract and commenced work under that contract. The problem would be comparatively simple had a loss occurred prior to the expiration date shown on this certificate, May 27, 1950. However, the fire upon which plaintiff's action is based did not occur until June 2d.

Subsequent to the Antrobus letter of March 31st, telephone conversations were held between Goodenough on the one hand and Philip Antrobus and McDowell on the other. Due to Goodenough's death the only version of these conversations is that of the latter two. They claimed that Goodenough was informed that while they would issue evidence of the

existing policy they could not extend it. They requested further information so that they could place new coverage for the Atkinson contract. While this was going on the fire occurred but they did not learn of it until June 27th. Goodenough then told them that the Atkinson contract had about three months to go, and had to have coverage, that plaintiff had a fire. "It was not any claim under your policy . . ." However, it made them conscious of the danger of another fire and Goodenough wanted Antrobus to place this coverage even if it cost $200. (The premium for the original policy was 40 cents per $100 of plaintiff's payroll. A deposit of $250 was made on account.) H. O. Rutherford testified he told Goodenough about the fire immediately after it occurred and that about June 12th Rutherford phoned Antrobus and was told that liability was denied. Antrobus testified that Goodenough made no claim for the fire loss and "definitely indicated that there was no loss under our policy." Antrobus made no investigation of the fire loss. Goodenough was told that the original policy could not be extended to cover Atkinson; that Antrobus would have to cable Lloyd's for a separate placing because they had established that there was burning going on and under Antrobus' agreement with Lloyd's Antrobus could not cover that sort of work. When they issued the first policy they were advised there would be no burning.

On July 20, 1950, an endorsement was added to the original policy reading:

"Issued to Rutherford, Inc.
Endorsement effective May 27, 1950

\* \* \*

"In consideration of an additional Minimum and Deposit Premium of $21.23, it is hereby understood and agreed that the period of the above numbered Policy/Certificate is extended to expire —

June 27, 1950

instead of as originally specified."

The same day a policy of insurance was issued specifically covering the Atkinson contract. For this policy a premium of $200 was charged later, based on the Utah Construction Company payroll. At no time was the Atkinson payroll used for premium purposes. Another "Certificate of Insurance" relating to the new policy similar in form to that of March 31st was addressed and sent to Atkinson. Antrobus testified that

Goodenough did not advise or intimate that by giving the extension to June 27th Antrobus would be covering the fire which had already occurred.

One Bedell, an insurance expert, testified that the March 31st ''Certificate of Insurance'' was the same as a cover note but not a modification of the original policy.

## WAS THE ATKINSON CONTRACT COVERED?

No issue is raised by the pleadings nor urged by plaintiff upon the theory that the actions of defendants or any of them misled plaintiff into believing it was covered. The cause of action pleaded and tried is based on the claim that insurance was actually given.

Plaintiff's theory as set forth in its complaint was that the original policy was extended to cover the Atkinson contract by both the ''Certificate of Insurance'' of March 31, 1950, and by the later endorsement extending the policy to June 27th. The testimony of Philip Antrobus and McDowell does not support this theory. ■ However, in view of the obvious interest of these witnesses, the jury had the right to and no doubt did disregard their version of the situation. This leaves the case to be determined by the writings themselves, and the reasonable inferences to be drawn therefrom. ■ As there is no conflict in the evidence we are not bound by the trial court's interpretation of these writings and can make our own. (*Estate of Platt*, 21 Cal.2d 343 [131 P.2d 825].)

■ These writings do not show an amendment of the original policy nor an extension of it to cover the Atkinson contract. Assuming that the March 31st ''Certificate of Insurance'' acted as a cover note for the Atkinson contract as interpreted by Bedell, still it did not constitute an amendment of the policy, and it expired May 27th. In the letter sending it Antrobus pointed out that the *certificate* expired on that date and they wanted renewal advices. This certificate never was renewed or extended. When, after the fire had occurred and on July 20th, new documents were issued, they were, first, an extension of the original policy to June 27th, and secondly, an independent policy covering the Atkinson contract and commencing June 27th and ending September 27th. As the first policy had not been amended to cover the Atkinson contract, its extension would only apply to the contract which it did cover, namely, the Utah Construction Company contract. Even though the March 31st certificate constituted a cover note, applying to the Atkinson contract, the extension was only of

the policy which applied solely to the Utah Construction Company contract, and which policy even plaintiff's own expert admitted had not been modified. Moreover, the minimum and deposit premium obtained for the extension was based solely on the Utah Construction Company payroll. Obviously, coverage would not have been given for the Atkinson contract at a time when all parties knew that there had been a heavy loss by fire under the latter contract without some consideration of the Atkinson payroll. Moreover, if the extension covered the Atkinson contract what was the necessity of issuing a new policy? The writings themselves refute the allegations of plaintiff's complaint that on March 31, 1950, the policy was amended to cover the Atkinson contract and that as amended the policy was extended by endorsement.

### ELEMENTS OF DAMAGE

In view of our determination that there was no coverage, it is unnecessary to determine whether the cost to plaintiff of fighting the fire was included in the terms of the policy.

The judgment is reversed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied October 9, 1953, and respondent's petition for a hearing by the Supreme Court was denied November 5, 1953. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.